PEOPLE *v.* FIDEL

PEOPLE *v.* HODO

1. CRIMINAL LAW—WITNESSES—IMPEACHMENT.

The right of the prosecution to impeach its own witness is derivative of and coextensive with its obligation to call that witness.

2. CRIMINAL LAW—WITNESSES—ACCOMPLICES—IMPEACHMENT.

The prosecutor may not impeach an accomplice called by him as a witness, because the prosecutor is not under obligation to call an accomplice.

3. CRIMINAL LAW—WITNESSES—ACCOMPLICES—DUTY TO CALL.

The prosecutor was not obligated to call as a witness in defendant's trial a man who had told the police that he was a participant in the crime and inculpated the defendants and then, at the preliminary examination, repudiated his statements inculpating the defendants where the witness had never denied his own participation in the crime charged and defense counsel objected to the witness's being called.

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 October 5, 1971. (Docket Nos. 10001, 10004.) Decided December 6, 1971.

Joseph Fidel and Herman Hodo were convicted of robbery armed. Defendants appeal. Reversed and remanded.

---

REFERENCE FOR POINTS IN HEADNOTES

[1-3] 58 Am Jur, Witnesses § 792 *et seq.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas R. Lewis,* Assistant Prosecuting Attorney, for the people.

*Alice Brantley Rucker,* for defendant Fidel on appeal.

*Arthur J. Tarnow,* State Appellate Defender (by *M. Gerald Schwartzbach*), for defendant Hodo on appeal.

Before: LESINSKI, C. J., and V. J. BRENNAN and O'HARA,* JJ.

O'HARA, J. These are appeals from jury convictions of the offense of robbery armed. MCLA § 759.529 (Stat Ann 1971 Cum Supp § 28.797). These appeals were taken of right.

The factual background and the prior proceedings are somewhat complex, and we deem it advisable to set them both out in relative detail before we undertake disposition of the controlling legal question.

On May 16, 1967, a Detroit hotel, catering to very short-time occupancy by couples, was robbed at gun point. Ingress was gained by a man and woman posing as potential customers. Upon entrance the man taped the hands and eyes of the hotel employees and one patron. After this, their knowledge of the subsequent events was obviously limited to auricular impressions. They testified to hearing voices, footsteps, doors opening and closing, and a rumbling

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

noise like a heavy object being rolled along a corridor. A large amount of money was taken from a cash box, but a safe moved to a stair landing was left unopened. One of the two defendants was identified, by a witness who effected entrance to the hotel after the robbery was in progress, as being present, armed, and a participant in the robbery. Outside of this identification, the case against the two defendants was largely circumstantial.

The circumstances were as follows: One of the defendants lived next door to the hotel which was robbed. On the morning prior to the robbery he rented a U-Haul van in his own name. A companion, with him at the time of the rental, asked to borrow a dolly which he threw in the back of the rented van. The two men had driven to the U-Haul rental lot in a blue Pontiac. The U-Haul agent was able to recall two digits in the license plate on the Pontiac. He was also able to recognize the man who accompanied the renter of the unit as the same man identified as having participated in the robbery. Other witnesses testified to the presence, at the robbery scene, of a van similar to that rented by one of the defendants, and to the presence of a blue Pontiac parked nearby with two of the digits previously specified in the license plate by the U-Haul agent. Another witness testified that at the time of the robbery two men ran past him toward the van and the car. The next day the van was turned in to the rental lot and the fee paid.

The police department undertook an investigation of the robbery. By whatever techniques employed, a man named John Wesley Brown was arrested, and on May 19, 1967, he gave a detailed statement, out of the presence of the two defendants, reciting by chapter and verse the plan and execution of the

holdup and naming the two defendants as partici-
pants. They were arrested and charged with the
offense. For whatever reason, the informant was
not. At the preliminary examination Brown com-
pletely repudiated his previous inculpatory state-
ment. He exculpated both defendants, and claimed
one of his coparticipants was dead and that the
other's whereabouts was unknown to him.

The defendants were nonetheless bound over for
trial. It began on September 9, 1969, and ended in
a "hung" jury September 19, 1969. A new trial
began June 10, 1970, ending in a conviction June 23,
1970. Appeals were taken as before noted. We
now tackle the knotty legal issue which was properly
preserved and which is before us for review.

On the second trial John Wesley Brown was in-
dorsed on the information as a *res gestae* witness.
He was called by the prosecuting attorney. At this
point, able and alert defense counsel, individually
and in concert, objected strenuously, if not heatedly,
to the right of the prosecuting attorney to call
Brown. The thrust of the objection and arguments
in support thereof were that, while Brown was a
*res gestae* witness, he was also a confessed partici-
pant in the crime established by his statement to
the prosecutor and by his own testimony twice under
oath. Thus, argued the defendants, the prosecution
was under no obligation to call him. Further, coun-
sel argued that by calling him without the obligation
to do so was an obvious ploy, an "outrageous" tactic,
and done only for the purpose of getting the other-
wise inadmissible extrajudicial statement inculpat-
ing defendants before the jury as substantive evi-
dence of guilt.

Anticipatorily, defense counsel further fulminated
that no instruction given *instanter,* or in the charge
in chief, that Brown's inculpatory statement was not

to be considered as bearing on the defendants' guilt but only as bearing on the very limited issue of Brown's credibility, could counteract the effect of the statement upon the jury. Once in, contended counsel, the jury could not possibly make that delicate distinction and defendants would be victims of otherwise inadmissible and highly prejudicial testimony against which they had no possible defense. Thus they would be denied a fair trial, argued defense counsel, in the constitutionally guaranteed sense.

Not so at all, countered the people. In the first place the prosecutor contended that he would need prescient knowledge to anticipate what the unpredictable Mr. Brown would say on *this* trial, and thus know whether he would, in fact, be an accomplice or not. He contended that while it might be true that case law clearly holds that an accomplice, a confederate, a coparticipant *need* not be called by the people, nowhere had it been authoritatively held that the people could *not* call any *res gestae* witness, accomplice or not, and impeach him and impugn his credibility by showing a prior inconsistent statement which inculpated the charged defendants.

Precedent abounds[1] as to the obligation of the State to indorse all *res gestae* witnesses in the interests of the search for truth. Equally well settled is the exception relieving the people of the necessity of calling an accomplice.

We hold here that the right of the prosecution to impeach its own witness is derivative of, and coextensive with, the obligation to call that witness. Absent the obligation, a witness thus called becomes the people's witness and subject to the settled rules

---

[1] There is little point in citing individual cases in support of what is settled law. In lieu thereof, we have appended a list of the case which we examined and considered.

concerning the examination of any witness voluntarily called by either party.

In the case at bar, while Brown had made prior inconsistent statements as to the complicity of the charged *defendants* in the robbery, he at no time denied his own participation therein. This fact was known to both the prosecuting attorney and defense counsel. This, together with defense counsel's objection to calling Brown, clearly relieved the people of any necessity of calling him. Obviously, defendants could not thereafter predicate any claim of error on the failure of the prosecution to indorse and call Brown as a known *res gestae* witness.

The devastating effect of the prior extrajudicial statement inculpating both defendants, which would otherwise have been inadmissible on the issue of defendants' guilt or innocence, cannot be minimized. Such prior inconsistent statement could not be received as substantive evidence. *Ruhala* v. *Roby* (1967), 379 Mich 102.

The prosecutor by calling Brown himself when not required to do so and eliciting exculpatory substantive testimony that could not but weaken his case in chief, and then impeaching Brown by the inculpatory extrajudicial statement, did get before the jury, inadvertently or otherwise, inadmissible evidence which under these circumstances should not have been received over objection on the stated ground. The prejudice to defendants was of such magnitude as to move us to reverse and remand for a new trial.

It is so ordered.

All concurred.

# APPENDIX

Cases recognizing the state's obligation to indorse all *res gestae* witnesses include the following:

*People* v. *Howard* (1970), 24 Mich App 328; *People* v. *Haywood* (1970), 28 Mich App 459; *People* v. *Roland Robinson* (1971), 30 Mich App 372; *People* v. *King* (1971), 32 Mich App 167; *People* v. *Gomolka* (1970), 28 Mich App 636; *People* v. *Banks* (1970), 27 Mich App 331; *People* v. *Hutson* (1970), 25 Mich App 109; *People* v. *Alexander* (1970), 26 Mich App 321; *People* v. *Campbell* (1971), 30 Mich App 43; *People* v. *Green* (1971), 34 Mich App 149; *People* v. *June* (1971), 34 Mich App 313.

Equally well-established is the accomplice exception to the *res gestae* rule:

*People* v. *Leroy Morgan* (1970), 24 Mich App 660; *People* v. *Alonzo Sanders* (1970), 28 Mich App 510; *People* v. *Moore* (1971), 29 Mich App 597; *People* v. *Chaney* (1970), 21 Mich App 120; *People* v. *Crown* (1971), 33 Mich App 266; *People* v. *Green* (1971), 32 Mich App 482.