Cavanagh, J.
(dissenting). I disagree with the majority’s conclusion that a manifest necessity required a mistrial. In reaching its holding, the majority eviscerates established precedent requiring that trial judges exert reasonable efforts to avoid a mistrial. Because I cannot agree that the prohibition *226 against placing a defendant in double jeopardy evaporates simply because a defendant fails to object when a jury expresses discord, I respectfully dissent.
It is not apparent from the record that it was manifestly necessary to declare a mistrial. “Because of the high value placed on defendant’s not being required to undergo the discommodity of a second trial, the declaration of a mistrial should not be made lightly, even when it is made ostensibly for the protection of defendant.” People v Johnson, 396 Mich 424, 438; 240 NW2d 729 (1976). As a “general rule, . . . trial judges must consider reasonable alternatives before declaring a mistrial.” People v Hicks, 447 Mich 819, 841; 528 NW2d 136 (1994) (opinion of Griffin, J.).
[I]n the absence of a motion by a defendant for a mistrial, “ ‘the Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant’s option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. ...’ ” [People v Benton, 402 Mich 47, 57; 260 NW2d 77, 81 (1977), quoting United States v Dinitz, 424 US 600; 96 S Ct 1075; 47 L Ed 2d 267 (1976).]
Contrary to the majority’s assertions, this Court’s precedent finds support in the guidance provided by the United States Supreme Court, which has affirmed that
a constitutionally protected interest is inevitably affected by any mistrial decision. The trial judge, therefore, “must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.” In order to ensure that *227 this interest is adequately protected, reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story, the trial judge exercised “sound discretion” in declaring a mistrial. [Arizona v Washington, 434 US 497, 514; 98 S Ct 824; 54 L Ed 2d 717 (1978) (citations omitted).] [Emphasis added.]
Thus, sound discretion requires a thoughtful, prudent analysis.
Even though no specific inquiry into alternatives to declaring a mistrial is required, such an inquiry would make clear the justification for retrial. Where no consideration of alternatives is evident, something else on the record must make clear the trial judge exercised “sound discretion” before declaring a mistrial. Unfortunately, no sound discretion was exercised here. Although this first-degree murder trial spanned a ten-day period, tried intermittently over six days, the deliberations lasted just over four hours.[1] The jury likely spent the first thirty-five minutes, late Thursday afternoon, doing little more than electing a foreperson. A few hours into the deliberations on Friday morning, the jurors sent a note to the judge that indicated concern over their voice levels during deliberation. Some time later, the jury sent another note that asked about the consequences if they failed to agree. On that basis, the trial judge ordered the jury into the courtroom at 12:45 P.M. and asked the foreperson whether the jury could reach a verdict. The foreperson responded, “no.” The trial judge then immediately declared a mistrial, and by 12:48 P.M., the jury was excused. Never did the trial judge consider alternatives or otherwise provide evidence that she exer *228 cised sound discretion. For example, the judge did not poll the jurors, give an instruction ordering further deliberations, query defense counsel about his thoughts on continued deliberations, or indicate on the record why a mistrial declaration was necessary.
Though I acknowledge that a trial judge need not perform any explicit act to ensure a mistrial is manifestly necessary, there must be some indication on the record that such a grave act was required. Washington at 516-517 (the record must provide “sufficient justification” of the manifest need for a mistrial). In this case, where the jurors had been deliberating only a short time, where the note from the jurors merely questioned what, might happen if they did not agree, where the judge-albeit in an attempt to properly keep the jurors’ positions concealed-suppressed all comments by the foreperson that could have shed light on the need for a mistrial, and where the record as a whole fails to reveal that “the ends of public justice” would be served by the declaration of a mistrial, I cannot agree that subjecting defendant to a new trial was manifestly necessary. Benton at 57.
The majority makes special note of defendant’s silence, observing that defense counsel did not object to the mistrial declaration. Ante at 222. However, it was not necessary that defendant object at the very moment the mistrial had been declared, particularly because the jurors were simultaneously dismissed. Though an objection on the record would have been helpful in determining defendant’s position and in refreshing the judge concerning her duty to exercise sound discretion, defense counsel’s failure to voice an objection cannot be considered evidence that a mistrial declaration was manifestly necessary.
*229 The majority insinuates that defendant tried to have his cake and eat it too by failing to object to the mistrial declaration. However, defendant gained nothing as a result of his counsel’s failure to timely object.[2] Either the trial judge properly declared a mistrial on the basis of manifest necessity, or she did not. If she had, retrial would have been proper. If not, defendant’s right to be free from double jeopardy was violated by the second trial. If defendant had succeeded in convincing a majority of this Court that the mistrial declaration was improper, he would gain nothing other than the lawful protection of his inherent constitutional rights. That the state was able to try defendant a second time and to secure a conviction cannot make an unconstitutional second trial retrospectively valid.
The new standard articulated by the majority negates any substance the manifest necessity inquiry might have. Though the majority may feel that trial judges can declare a mistrial on the most meager record without even a cursory attempt to assure that the public interest in such a declaration outweighs the defendant’s clear interest in resolution by the first factfinder, this narrow inteipretation of “sound discretion” must be rejected. The majority’s conclusion ignores precedent from this Court and cursorily dismisses the mandate from the Supreme Court af *230 fuming the need for trial judges to exercise “sound discretion.”[3]
In erroneously finding that manifest necessity required mistrial, the majority diminishes the constitutional rights of our citizens, specifically the right to be free from double jeopardy. Even though defense counsel failed to timely object, causing defendant to suffer unnecessarily through a second trial, such an error does not excuse a violation of constitutional magnitude. Therefore, I would affirm the decision of the Court of Appeals.
Kelly, J., concurred with Cavanagh, J.

 Although it is not clear from the record when the jury reconvened June 13, 1997,1 have assumed deliberations got under way at 9:00 am.

 Defense counsel’s failure to raise the double jeopardy issue any time before or during the second trial was not objectively reasonable. No trial strategy could justify failing to object to the second trial. Defendant had nothing to gain by exposing himself to a second trial and, instead, lost the very thing the right was meant to protect: subjection to a trial in which the state had a second shot to get it right, i.e., to get a conviction.

 The majority attempts to escape its duty to execute the Supreme Court’s mandate, i.e., to assure the trial court exercised “sound discretion,” by implying that I simply differ with the trial court’s result. To clarify, I object not to the trial court’s concern that the jurors held irreconcilable differences-in fact, I share that concem-but to its utter failure to make the pronouncement in a manner that evidences the exercise of “sound discretion.” Because the judge did nothing more than act on a hunch with the most meager record for support, I cannot agree that “sound discretion” was exercised.