PEOPLE v WHALEN

Docket No. 53718. Submitted December 21, 1982, at Detroit.—Decided October 24, 1983.

Michael B. Whalen was convicted of second-degree murder, Detroit Recorder's Court, Michael F. Sapala, J. Whalen was tried before a jury in a joint trial with codefendant Patrick McDonald, who had been charged with manslaughter, had waived his right to a jury trial and was acquitted by the trial judge. The defendant appealed, alleging that: (1) the trial court erred in admitting at the trial the preliminary examination testimony, including impeachment testimony, of his wife, Patricia Moyer Whalen, whom he had married subsequent to the preliminary examination and prior to the trial, (2) he was denied the effective assistance of counsel, (3) there was insufficient evidence for a rational trier of fact to find the essential elements of second-degree murder proven beyond a reasonable doubt, (4) the trial court erred in denying his motion for a directed verdict, and (5) the trial court erred in denying his motion for a new trial. *Held:*

1. The trial court did not err in holding that the preliminary examination testimony of the defendant's wife was admissible

REFERENCES FOR POINTS IN HEADNOTES

[1] 81 Am Jur 2d, Witnesses § 118.
[2] 81 Am Jur 2d, Witnesses § 69.
[3] 81 Am Jur 2d, Witnesses § 659.
[4, 5] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.
  81 Am Jur 2d, Witnesses § 2.
[6] 81 Am Jur 2d, Witnesses § 622.
[7] 5 Am Jur 2d, Appeal and Error §§ 778, 798.
  21A Am Jur 2d, Criminal Law § 908.
  [8] 21A Am Jur 2d, Criminal Law §§ 752, 984-987.
Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.
  Incompetency of counsel chosen by accused as affecting validity of conviction. 74 ALR2d 1390.
[9] 4 Am Jur 2d, Appeal and Error § 541.
  5 Am Jur 2d, Appeal and Error §§ 546, 624 *et seq.*
[10, 11] 29 Am Jur 2d, Evidence §§ 739, 740, 749, 755.
[11] 81 Am Jur 2d, Witnesses § 610.

at the trial. The testimony of a spouse, given at a preliminary examination at a time when the spouse was not married to the defendant, is admissible at the trial when the defendant asserts the marital privilege. The trial court erred, however, in admitting the portion of the wife's preliminary examination testimony impeaching her credibility. Although the wife was a res gestae witness, the prosecuting attorney was not obliged to call her at the trial and thus the prosecutor improperly impeached the credibility of his witness. Further, the testimony did not surprise the prosecuting attorney. He had already heard the testimony at the preliminary examination, and the testimony was not injurious to the prosecutor's case. The admission of the impeachment testimony was error prejudicial to the defendant and the defendant's conviction should be reversed.

2. The defendant received effective assistance of counsel. The Court of Appeals is reluctant to substitute its judgment for that of trial counsel in matters of trial strategy.

3. There was sufficient evidence for a rational trier of fact to find that the essential elements of second-degree murder were proven beyond a reasonable doubt.

4. The trial court did not err in denying the defendant's motion for a directed verdict at the close of the proofs.

5. The trial court did not err in denying the defendant's motion for a new trial. The verdict was not against the great weight of the evidence.

Reversed and remanded.

V. J. BRENNAN, P.J., dissented. He believed that, where a res gestae witness testifies at the preliminary examination and that testimony is properly impeached by evidence of a prior inconsistent statement, if the witness is thereafter unavailable to testify at the trial through no fault of the prosecutor, the entire preliminary examination testimony excluding only the parts not properly admitted at the preliminary examination is admissible. He believes that the preliminary examination testimony of the defendant's wife was admissible in its entirety because it was properly admitted at the preliminary examination and the defendant had an opportunity to develop the testimony by cross-examination. He would affirm the defendant's conviction.

### OPINION OF THE COURT

1. CRIMINAL LAW — MARITAL PRIVILEGE — WITNESSES.

The testimony of a defendant's spouse, given at a preliminary examination at a time when the spouse was not married to the

defendant, is admissible at a trial where the defendant asserts the marital privilege; the spousal privilege is narrow in its justification and ought to be narrowly construed in its scope (MCL 600.2162; MSA 27A.2162).

2. WITNESSES — UNAVAILABILITY OF WITNESSES.

A witness may actually attend a trial and yet still be unavailable for testifying due to some incapacity (MCL 768.26; MSA 28.1049).

3. WITNESSES — IMPEACHMENT — RULES OF EVIDENCE.

Generally, a party calling a witness may not impeach the credibility of that witness; however, a party calling a witness may impeach the credibility of the witness if the calling party is the prosecutor and he was obliged to call the witness or if the witness's testimony was contrary to that which the calling party had anticipated and was actually injurious to the calling party's case (MRE 607).

4. WITNESSES — RES GESTAE WITNESSES.

The only witnesses that a prosecutor is required to call at a criminal trial are res gestae witnesses (MCL 767.40; MSA 28.980).

5. WITNESSES — MARITAL PRIVILEGE — CRIMINAL LAW — RES GESTAE WITNESSES.

The wife of an accused need not be endorsed on the information nor be called by the prosecution if her name is endorsed on the information even though she may be a res gestae witness.

6. WITNESSES — IMPEACHMENT — PROSECUTING ATTORNEYS — RULES OF EVIDENCE.

A prosecuting attorney is permitted to impeach a res gestae witness whom he has called where the witness's testimony is contrary to that which the prosecutor had anticipated and was actually injurious to his case (MRE 607[2][C]).

7. CRIMINAL LAW — HARMLESS ERROR — REMEDIES.

Error is not harmless and a defendant must be retried if it is reasonably possible that in a trial free of the error complained of even one juror might have voted to acquit the defendant; a conviction should stand if the proof was so overwhelming, aside from the taint of error, that all reasonable jurors would find guilt beyond a reasonable doubt.

8. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

The standard to determine whether a defendant had effective

assistance of counsel in a criminal trial is (1) whether defense counsel performed at least as well as a lawyer with ordinary training and skill in the criminal law and conscientiously protected his client's interests, undeflected by conflicting considerations, and (2) whether defense counsel made a serious mistake but for which the defendant would have had a reasonably likely chance of acquittal.

9. APPEAL — TRIAL STRATEGY.

The Court of Appeals is reluctant to substitute its judgment for that of trial counsel in matters of trial strategy.

DISSENT BY V. J. BRENNAN, P.J.

10. WITNESSES — PRIOR TESTIMONY — RULES OF EVIDENCE.

*The former testimony of a witness is admissible if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination where the witness is unavailable to testify at a trial (MRE 804).*

11. WITNESSES — PRIOR TESTIMONY — RULES OF EVIDENCE.

*The entire preliminary examination testimony of a res gestae witness, excluding the parts not properly admitted at the preliminary examination, should be admissible at a trial where the res gestae witness testified at the preliminary examination and was properly impeached by evidence of a prior inconsistent statement and thereafter is unavailable to testify at a trial through no fault of the prosecuting attorney (MRE 804).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Sheldon Halpern,* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and J. M. GRAVES, JR.,* JJ.

J. M. GRAVES, JR., J. Defendant, Michael Barry Whalen, appeals as of right his conviction of sec-

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

ond-degree murder, MCL 750.317; MSA 28.549, alleging numerous errors for our consideration. Defendant was tried before a jury in a joint trial with codefendant Patrick McDonald. McDonald, who had been charged with manslaughter, had waived his right to a jury trial and was acquitted by the trial judge. The first issue raised by defendant concerns the admission at trial of the preliminary examination testimony given by Patricia (Moyer) Whalen. The preliminary examination was held on July 5, 1979, and the trial commenced on August 21, 1979. Patricia Moyer, a res gestae witness to the homicide, married the defendant on July 31, 1979. At the trial the defendant asserted that the marital privilege, MCL 600.2162; MSA 27A.2162, precluded his wife from being called as a witness. When the prosecutor then offered the preliminary examination testimony of Patricia Moyer, the defendant objected on the ground that the testimony consisted of impeachment by the prosecution of its own non-res gestae witness. The trial court overruled this objection and admitted the preliminary examination testimony into evidence.

Defendant first argues that none of the preliminary examination testimony should have been admitted because the defendant did not consent to having his wife testify against him. MCL 600.2162; MSA 27A.2162 embodies the marital privilege. The relevant portion of that statute reads, "[a] husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent". The spousal privilege in Michigan, like the modern common-law privilege, is narrow in its justification and ought to be correspondingly narrowly construed in its scope. *People v Wadkins,* 101 Mich App 272, 283; 300 NW2d 542 (1980). We hold that

the testimony of a spouse, given at a preliminary
examination at a time when the spouse was not
married to the defendant, is admissible at the trial
when the defendant asserts the marital privilege.
Such preliminary examination testimony is clearly
admissible pursuant to either MCL 768.26; MSA
28.1049, or MRE 804(a)(1), 804(b)(1). MCL 768.26;
MSA 28.1049 reads:

"Testimony taken at an examination, preliminary
hearing, or at a former trial of the case, or taken by
deposition at the instance of the defendant, may be
used by the prosecution whenever the witness giving
such testimony can not, for any reason, be produced at
the trial, or whenever the witness has, since giving such
testimony become insane or otherwise mentally inca-
pacitated to testify."

A witness may actually attend the trial and yet
still be "unavailable" as that term is implied in
MCL 768.26; MSA 28.1049. See *People v Burgess,*
96 Mich App 390, 401; 292 NW2d 209 (1980). MRE
804(a)(1) states:

"(a) Definition of unavailability. 'Unavailability as a
witness' includes situations in which the declarant—

"(1) is exempted by ruling of the court on the ground
of privilege from testifying concerning the subject mat-
ter of his statement * * *."

MRE 804(b)(1) provides:

"(b) Hearsay exceptions. The following are not ex-
cluded by the hearsay rule if the declarant is unavail-
able as a witness:

"(1) *Former testimony.* Testimony given as a witness
at another hearing of the same or a different proceed-
ing, or in a deposition taken in compliance with law in
the course of the same or another proceeding, if the

party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

If the marital privilege is asserted at trial, the defendant's spouse is "unavailable" as a witness within the meaning of both the aforementioned statute and rules of evidence. Consequently, if the spouse testified at the preliminary examination at a time when the spouse was not married to the defendant, or, alternatively, if the spouse testified at the preliminary examination while married to the defendant and the marital privilege was not properly asserted, the preliminary examination testimony is admissible at trial when the marital privilege is asserted by the defendant. Such a holding is consistent with decisions rendered by courts of several of our sister states. See *Wells v Commonwealth*, 562 SW2d 622, 624 (Ky, 1978); *Simms v State*, 492 P2d 516, 520-521 (Wy, 1972); *State v Woods*, 130 Kan 492, 493; 287 P 248 (1930).

Defendant presents further argument concerning the admission at the trial of a certain portion of the preliminary examination testimony of Mrs. Whalen. During direct examination at the preliminary hearing, the witness testified that she had not previously discussed with the defendant anything about the incident in question. Following this response, the prosecutor showed the witness two pieces of paper marked "Witness Statement". He then asked her to read from that document a particular question and answer. The witness refused to read it and stated that she knew what it said. The prosecutor proceeded and asked her if she knew Sergeant Dwyer. The witness responded affirmatively and admitted making a statement to him at the police station. She further admitted

that the "Witness Statement" was an accurate recording of her discussion with Sergeant Dwyer. Mrs. Whalen stated that the signature thereon was hers, but that not all of the statements she made at that time were true. The testimony continued:

"*Q.* Now, specifically, do you recall me having you read a specific question and answer from the statement?

"*A.* Uh-huh.

"*Q.* Do you recall giving—being asked this question and giving this answer?

"First of all, let me read the question. 'Question: Is there anything else you can tell me about the fight?

" 'Answer: Yes. When Mike Whalen first came out to the car, he told me, "Yeah, I stabbed the guy," just like that. Also, on the way home Mike said that when he was leaving the restaurant there was a guy that had a hold of Louie Fenazzio. Mike confronted the guy and he said he was a police officer and told Mike to stay there, and put a gun to Mike's chest. Mike said, "Show me some ID," and the guy did and Mike threw it out into Eight Mile and said, "You're going to have to kill me and you'll get killed too." Then someone hit the police officer and Mike came out to the car.

" 'As we were leaving, Frank and Louie were coming out and Mike asked them if the guy was alive or dead. They said they didn't know, and that's all I know. I really didn't see the fight.'

"Do you recall being asked that question and did you give that answer?

"*A.* Okay. One thing—

"*Q.* First of all, answer that and then we'll proceed from there.

"Do you recall being asked that question and giving that answer?

"*A.* The only—they—

"*Q.* Will you just answer the question?

"*A.* Sgt. Dwyer told me everything.

"*The Court:* Ma'am, we have our little particular procedures and he is going to give you an opportunity

to answer more fully, but first, we have to ask you the questions in a certain order because we have rules of evidence.

*"The Witness:* Say it again.

*"Q. (By Mr. Janice, continuing):* Do you recall being asked that question and giving that answer?

\* \* \*

"The question and answer which I have just read to you, ma'am, do you recall being asked that question and giving that answer? Just answer that yes or no.

*"A.* No."

Defendant argues that the aforementioned impeachment testimony, originally presented at the preliminary examination, was improperly admitted at trial. We agree that the admission of the impeachment testimony at trial was improper and violated MRE 607. Generally, the calling party may not impeach his own witness. MRE 607; *People v White,* 401 Mich 482, 508; 257 NW2d 912 (1977). However, MRE 607(2)(A) provides that the calling party may impeach the credibility of a witness "if (A) the calling party is the prosecutor and he is obliged to call the witness". MRE 607(2)(C) provides that the calling party may impeach the credibility of a witness if "the witness's testimony was contrary to that which the calling party had anticipated and was actually injurious to the calling party's case".

In the case at bar, the impeachment testimony was not admissible within the scope of MRE 607(2)(A). The only witnesses that the prosecutor is required to call are res gestae witnesses. MCL 767.40; MSA 28.980; *People v Brooks,* 96 Mich App 96, 98; 292 NW2d 139 (1980). There is no question that Mrs. Whalen was a res gestae witness as that term is defined in *People v Hadley,* 67 Mich App 688, 690; 242 NW2d 32 (1976). She was present

with defendant at the scene of the crime at the
time of the alleged homicide and drove away with
defendant from the crime scene. Nevertheless,
even though Mrs. Whalen was a res gestae wit-
ness, the prosecutor was not obliged to call her at
trial because at the time of the trial Mrs. Whalen
was the defendant's wife. In *People v Raider,* 256
Mich 131, 135; 239 NW 387 (1931), the Court, in
discussing exceptions to the prosecutor's duty to
endorse and call res gestae witnesses, stated that
the wife of an accused need not be endorsed on the
information nor be called by the prosecution if her
name is endorsed on the information. As the prose-
cutor was not obliged to call Mrs. Whalen, he was
not entitled to impeach her credibility pursuant to
MRE 607(2)(A). As the Court noted in *People v
Fidel,* 37 Mich App 338, 342-343; 194 NW2d 732
(1971):

"We hold here that the right of the prosecution to
impeach its own witness is derivative of, and co-exten-
sive with, the obligation to call that witness. Absent the
obligation, a witness thus called becomes the people's
witness and subject to the settled rules concerning the
examination of any witness voluntarily called by either
party."

The impeachment testimony was not admissible
within the scope of MRE 607(2)(C). To fall within
the ambit of this second exception, the prosecutor
must be surprised by the testimony given, and
that testimony must be actually injurious to the
prosecutor's case. *People v Hawkins,* 114 Mich
App 714, 724-726; 319 NW2d 644 (1982). In order
to be "surprised" at the witness's testimony, the
prosecutor must have been unable to reasonably
anticipate the proffered testimony. *People v Coyle,*
104 Mich App 636, 643; 305 NW2d 275 (1981). In

the instant case, the prosecutor obviously anticipated the testimony of Mrs. Whalen offered at the trial through use of the preliminary examination transcript because the prosecutor had already heard the identical testimony at the preliminary examination hearing. Further, Mrs. Whalen's testimony was not actually injurious to the prosecutor's case. The focus of the rule "is whether what was said, not what was not said, injured the calling party's case. * * * Where the witness's testimony is neutral, however, although it disappoints the calling party's expectations, it does not aid his opponent and thus it is not *actually* injurious." *Coyle, supra,* p 643. Prior to her impeachment at the preliminary examination, Mrs. Whalen testified that she had not previously discussed with the defendant anything about the incident in question. Thus, her testimony was neutral and perhaps disappointing to the prosecutor, but it was not actually injurious to the prosecutor's case.

The impeachment testimony was improperly admitted at trial. In a fact situation moderately analogous to the instant case, the Michigan Supreme Court stated in *People v White,* 401 Mich 482, 509-510; 257 NW2d 912 (1977):

"We do not approve of the practice of the people in a criminal case calling a witness they are under no duty to call, and who they have reason to know will deny all knowledge of the event and thereby add nothing of substance to the people's case, for the sole purpose of placing before the jury highly damaging evidence that the jury must be instructed may be considered only for impeachment purposes. *Cf. People v Giacalone,* 399 Mich 642; 250 NW2d 492 (1977). We seriously doubt the effectiveness of the limiting instruction in such a case. *Cf. Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968)."

The admission of the impeachment testimony was prejudicial error and mandates reversal. We apply the test articulated in *People v Christensen,* 64 Mich App 23, 33; 235 NW2d 50 (1975):

"In order to hold that the error in this case does not require reversal, however, we must also be able to say that it was 'harmless beyond a reasonable doubt'. If it is reasonably possible that in a trial free of the errors complained of, even one juror might have voted to acquit the defendant, then the error was not harmless and the defendant must be retried. If, on the other hand, the proof was so overwhelming, aside from the taint of error, that all reasonable jurors would find guilt beyond a reasonable doubt, then the conviction must stand."

See also *People v Robinson,* 386 Mich 551, 563-564; 194 NW2d 709 (1972), and *People v Thompson,* 111 Mich App 324, 329; 314 NW2d 606 (1981). In the case at bar, the evidence of defendant's guilt was not overwhelming. Of the 31 witnesses who testified for the prosecution, only 4 were able to state with varying degrees of certainty that defendant struck or lunged at the deceased while the deceased engaged in a fight with a third party, codefendant McDonald. Although the deceased died from a stab wound, no witness testified that defendant committed the stabbing. Indeed, none of the witnesses saw defendant with a knife in his hand at any time during the fatal altercation. The impeachment testimony contained alleged admissions by defendant that he had stabbed the deceased. We find it reasonably possible that at least one juror might have voted to acquit the defendant had the impeachment testimony been excluded.

Defendant alleges that he was denied effective assistance of counsel. The standard to determine whether a defendant had effective assistance of

counsel in a criminal trial is (1) whether defense counsel performed at least as well as a lawyer with ordinary training and skill in the criminal law and conscientiously protected his client's interests, undeflected by conflicting considerations, and (2) whether defense counsel made a serious mistake but for which the defendant would have had a reasonably likely chance of acquittal. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977); *People v Davis,* 123 Mich App 553, 561-562; 332 NW2d 606 (1983). We find that defendant received effective assistance of counsel according to the aforementioned standards. The record does not disclose the specific relationship between defendant, codefendant Patrick McDonald, and Jay Arvey, who was arrested at the scene of the crime with a bloody knife in his pocket but was not charged with the death of the deceased. If defense counsel had attempted to blame either McDonald or Arvey with the stabbing, it was possible that McDonald or Arvey, or both of them, would have retaliated by accusing defendant of committing the stabbing. Thus, defense counsel's decision not to blame McDonald or Arvey for the homicide was an appropriate trial strategy. This Court is reluctant to substitute its judgment for that of trial counsel in matters of trial strategy. *People v Lotter,* 103 Mich App 386, 390; 302 NW2d 879 (1981).

We also reject defendant's argument that there was insufficient evidence for a rational trier of fact to find the essential elements of second-degree murder proven beyond a reasonable doubt. In viewing the evidence presented by the prosecutor in a light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407

Mich 354, 368; 285 NW2d 284 (1979). The record
discloses credible evidence that the defendant was
involved in the second fight and lunged toward the
deceased shortly before the deceased fell to the
floor with a stab wound in his chest.

After reviewing all of the evidence presented at
trial, including that presented by the defense, we
also reject defendant's contention that the trial
court erred in denying the defense motion for a
directed verdict at the close of proofs. *People v
Thompson,* 114 Mich App 302, 307; 319 NW2d 568
(1982). Finally, we find no merit in defendant's
argument that the trial court erred in denying
defendant's motion for a new trial. The verdict
was not against the great weight of the evidence.
Determinations of weight and credibility were
made by the jury which heard the testimony and
observed the witnesses, and an appellate court will
not substitute its judgment for that of the jury.
*People v Atkins,* 397 Mich 163, 172; 243 NW2d 292
(1976). The trial court did not abuse its discretion
in denying defendant's motion for a new trial.
*People v Nichols,* 69 Mich App 357, 362; 244
NW2d 335 (1976).

Defendant's remaining allegations of error hav-
ing been rendered moot, we do not consider them.
*White, supra,* p 513.

Reversed and remanded for a new trial.

M. J. KELLY, J., concurred.

V. J. BRENNAN, P.J. *(dissenting).* I respectfully
dissent. I disagree with the majority's opinion
regarding the admissibility of the preliminary ex-
amination impeachment testimony of the defen-
dant's wife.

At the preliminary examination, Ms. Whalen,

then the defendant's girlfriend, testified that she had not previously discussed with the defendant anything about the incident in question. Following this response, the prosecutor showed Ms. Whalen two pieces of paper marked "Witness Statement". He then asked her to read from that document a particular question and answer. The witness refused to read it, stating that she knew what it said. The prosecutor proceeded, and asked her if she knew Sergeant Dwyer. The witness responded affirmatively and admitted making a statement to him at the police station. The witness further admitted that the "Witness Statement" was a written account of her discussion with Sergeant Dwyer. Ms. Whalen stated that the signature thereon was hers, but that not all of the statements that she made at that time were true. The testimony continued:

"*Q.* Now, specifically, do you recall me having you read a specific question and answer from the statement?

"*A.* Uh-huh.

"*Q.* Do you recall giving—being asked this question and giving this answer?

"First of all, let me read the question. 'Question: Is there anything else you can tell me about the fight?'

" 'Answer: Yes. When Mike Whalen first came out to the car, he told me, "Yeah, I stabbed the guy," just like that. Also, on the way home Mike said that when he was leaving the restaurant there was a guy that had a hold of Louie Fenazzio. Mike confronted the guy and he said he was a police officer and told Mike to stay there, and put a gun to Mike's chest. Mike said, "Show me some ID," and the guy did and Mike threw it out into Eight Mile and said, "You're going to have to kill me and you'll get killed too." Then someone hit the police officer and Mike came out to the car.

" 'As we were leaving, Frank and Louie were coming out and Mike asked them if the guy was alive or dead.

They said they didn't know, and that's all I know. I really didn't see the fight.'

"*A.* Okay. One thing—

"*Q.* First of all, answer that and then we'll proceed from there.

"Do you recall being asked that question and giving that answer?

"*A.* The only—they—

"*Q.* Will you just answer the question?

"*A.* Sgt. Dwyer told me everything.

"*The Court:* Ma'am, we have our little particular procedures and he is going to give you an opportunity to answer more fully, but first, we have to ask you the questions in a certain order because we have rules of evidence.

"*The Witness:* Say it again.

"*Q. (By Mr. Janice, continuing):* Do you recall being asked that question and giving that answer?

\* \* \*

"The question and answer which I have just read to you, ma'am, do you recall being asked that question and giving that answer? Just answer that yes or no.

"*A.* No."

At the preliminary examination, the defendant objected to the above impeachment, but not on the ground that it constituted improper impeachment. Rather, the defendant objected on the grounds that it was hearsay or that it was a confession and that there was "no evidence in the record to support a confession at this time". The trial court ruled that the impeachment was proper.

While I agree with the majority opinion's conclusion that the preliminary examination testimony was admissible, I cannot agree with the conclusion that the impeachment testimony was erroneously admitted. The majority opinion finds that, because the prosecutor was not required to call the defendant's wife as a res gestae witness at

the trial due to her marital status, the impeachment testimony given at the preliminary examination at a time when the witness was not married to the defendant was not admissible under MRE 607(2)(A). Also, the majority opinion finds that the testimony was not admissible pursuant to MRE 607(2)(C) because the prosecutor was not surprised by the testimony at the trial, having heard it at the preliminary examination, and the testimony was not injurious to the prosecutor's case because the witness testified that she did not discuss anything about the incident with the defendant and this testimony was neutral.

In determining the admissibility of the testimony in the instant case, I believe that we look only to MRE 804. If a witness is unavailable to testify at a trial, as the witness in the instant case due to a marital privilege, MRE 804(b)(1) provides that the former testimony of the witness is admissible "if the party against whom the testimony is now offered had an opportunity * * * to develop the testimony by direct, cross or redirect examination". I find that this rule allows the admission of the complete testimony of the witness. I do not think that the defendant may object at trial to the admission of various parts of the unavailable witness's former testimony on grounds that could not have been raised at the time the witness testified. I do not think that we have to analyze the preliminary examination testimony to determine whether any part of that testimony is inadmissible at trial except insofar as the defendant validly objected to parts of the testimony at the time the witness testified. If the testimony was properly admitted in the former proceeding then it is admissible when the witness is unavailable to testify at the trial.

Further, application of MRE 607 to the instant

case to disallow the admission of the impeachment testimony would circumvent or thwart the intent of the rule, which was designed to limit the impeachment of the calling party's own witness and, thereby, prevent the calling party from putting before the jury highly damaging evidence not otherwise admissible. In the instant case, the prosecutor would have been obliged to call Ms. Whalen as a res gestae witness at the trial and would have been able to impeach her if she testified contrary to her statement, MRE 607(2)(A), but for the fact that the defendant married the witness after the preliminary examination. Thus, the witness's unavailability was due to action on the part of the defendant and did not result from any action on the part of the prosecutor.

Thus, I find that, where a res gestae witness testifies at the preliminary examination and that testimony is *properly* impeached by evidence of a prior inconsistent statement, then, if the witness is thereafter "unavailable" at the trial to testify per MRE 804, through no fault of the prosecutor, the *entire* preliminary examination testimony, excluding only the parts not properly admitted at the preliminary examination, is admissible.

In the present case, I find that the impeachment testimony was admissible along with the rest of Ms. Whalen's testimony because it was properly admitted at the preliminary examination.

I also disagree with the majority's statement that the facts in the present case are "moderately analogous" to those in *People v White,* 401 Mich 482; 257 NW2d 912 (1977). I find that the present case is distinguishable from *People v White, supra,* wherein the Supreme Court stated:

"Finally, the people do not contend and we do not

find that the former trial transcript was admissible for substantive purposes under the former testimony exception to the hearsay rule. Hodges was not unavailable. He was in attendance at the trial. He did not refuse to testify or assert a privilege not to testify. See *People v Goldman,* 349 Mich 77; 84 NW2d 241 (1957) (refusal to testify); *People v Pickett,* 339 Mich 294; 63 NW2d 681 (1954) (claim of privilege). Here, the witness had *changed* his testimony. Under our prior cases the inconsistent statements are admissible only for impeachment purposes. *People v Anderson,* 2 Mich App 718; 141 NW2d 353 (1966); *People v Miner,* 138 Mich 290; 101 NW 536 (1904).[8]

---

"[8] The heart of the instant issue is the use of prior statements for substantive purposes. The Proposed Michigan Rules of Evidence, if adopted in the present form, would substantially change the law in this area. To illustrate, if on retrial Hodges testifies and is subject to cross-examination, a prior inconsistent statement could be considered by the factfinder as substantive evidence. Proposed MRE 801(d)(1). Whether a statement is in fact inconsistent may depend on the circumstances. In many cases a lack of memory is not considered inconsistent. See *People v Durkee,* 369 Mich 618; 120 NW2d 729 (1963). In some instances, however, the trial judge may properly find that an assertion of lack of memory is really a repudiation of the prior statement and therefore inconsistent with it. See McCormick, Evidence (2d ed), § 251, and cases cited therein. We further note that the Federal Rules of Evidence indicate a similar result, although only the prior sworn testimony would be admissible for substantive purposes. FRE 801(d).

"On the other hand, if upon a new trial, Hodges is for some reason unavailable, his testimony at the first trial would be admissible under current law as former testimony. *People v Pickett,* 339 Mich 294; 63 NW2d 681 (1954). If the witness is present but testifies to a lack of memory, claims a privilege, or refuses despite an order of the court to testify, he may nevertheless be deemed unavailable and the former testimony rule will apply just as if he could not be present. Proposed Michigan Rules of Evidence 804(a), 804(b)(1)." *People v White, supra,* pp 510-511.

---

The present case involves the former-testimony exception, whereas *People v White, supra,* did not. However, a case analogous to the present case is *People v Goldman,* 349 Mich 77; 84 NW2d 241 (1957), referred to in *People v White, supra.* In *People v Goldman, supra,* the defendant's accom-

plice was called as a witness to testify at the preliminary examination and refused to testify concerning the crime, but did testify that he had given, read, corrected and signed a statement and that its contents were true to the best of his knowledge. In his statement, the accomplice admitted his guilt and named the defendant as the person who had planned the crime and had furnished a truck for transporting stolen goods. At the trial, the accomplice again refused to answer questions concerning the crime and also refused to answer questions concerning the statement. The transcript of the accomplice's preliminary examination testimony and the written statement were admitted into evidence and read to the jury. The Supreme Court found:

"Were the statement and transcript properly received in evidence and permitted to be considered by the jury as substantive proof of defendant's guilt? We think *People v Pickett,* 339 Mich 294 (45 ALR2d 1341), controlling of an answer in the affirmative. There, as here, one of the participants in the crime, called as a people's witness, refused to testify at trial concerning the crime. We upheld the trial court's reception into evidence, as substantive proof of defendant's guilt, of the transcript of the recalcitrant witness's testimony given at the preliminary examination. See reasoning and discussion of pertinent authorities therein.

"Defendant seeks to distinguish the instant case from *Pickett* on the score that there the witness gave direct testimony concerning defendant's commission of the crime at the preliminary examination and his refusal to so testify occurred only at trial, while here the witness refused to do so both at the examination and at trial and his only testimony imputing guilt to defendant consisted of that given by him at the examination that the contents of his statement previously given to the officers were true. We think the distinction is one without a difference insofar as legal significance is

concerned. The defense was accorded the opportunity to cross-examine Johnson both at the examination and at trial. There was no denial to defendant of the right of confrontation of witnesses. Whether, as in *Pickett,* the transcript taken at the examination contained direct testimony of defendant's guilt, or, as here, only contained testimony labeling as true statements of the defendant's guilt contained in the witness's previously signed written statement is of little moment in appraising its worth as substantive proof of the ultimate question of defendant's guilt. In either circumstance, the essence of the testimony of the witness at the preliminary examination is a swearing to the truth of statements which prove defendant guilty. It is that testimony which is permitted to serve at trial as substantive proof of defendant's guilt, under authority of *Pickett,* when, as a practical matter, the witness who gave it, by his refusal to answer at trial, has rendered himself unavailable as a witness." *People v Goldman, supra,* pp 79-80.

In the instant case, where the witness was unavailable due to her marriage to the defendant, I find that, as in *People v Goldman,* the witness's entire preliminary examination testimony was admissible into evidence. Therefore, we need not address the issue of whether the prosecutor could have impeached the witness if she testified at the trial. We need only determine whether the impeachment was proper when the witness testified at the preliminary examination. I find no error on the part of the trial court by admitting into evidence all of Ms. Whalen's preliminary examination testimony.

I would affirm.