PEOPLE v CARR

Docket No. 65195. Submitted August 15, 1984, at Lansing.—Decided March 18, 1985.

Dana Carr was convicted by a jury in Jackson Circuit Court of armed robbery. He then pled guilty to being a third-time felony offender and was sentenced, Charles J. Falahee, J. Defendant filed a claim of appeal and, approximately ten months later, filed a late motion in the Court of Appeals to remand for the purpose of having the trial court hold an evidentiary hearing. The motion was denied on grounds that it lacked merit and was not timely filed. The Supreme Court denied defendant leave to appeal the denial of the motion, 411 Mich 1060 (1981). The prosecution thereafter filed a motion in the Court of Appeals to affirm defendant's convictions. The motion was granted. Defendant again sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, determined that defendant's earlier motion to remand identified an issue sought to be reviewed on appeal which should initially be decided by the trial judge and that defendant's motion to remand should have been granted. The orders of the Court of Appeals denying defendant's motion to remand and granting the prosecution's motion to affirm were vacated and the case was remanded to the Court of Appeals with instructions to remand to the trial court, while retaining jurisdiction, for a hearing on defendant's allegation that the prosecution failed to endorse and produce res gestae witnesses, 413 Mich 930 (1982). The Court of Appeals complied, and the trial court, following the hearing on remand, found that the persons defendant argued should have been endorsed and produced were not res gestae witnesses. In the process, the trial court denied

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 29 Am Jur 2d, Evidence §§ 708, 723, 728.

[2] 81 Am Jur 2d, Witnesses § 2.

[3] 5 Am Jur 2d, Appeal and Error § 884.

[5, 6, 9] 21A Am Jur 2d, Criminal Law §§ 752, 984, 985.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

[7, 8] 21A Am Jur 2d, Criminal Law §§ 749, 984.

defendant's motion for permission to raise the additional issue of newly discovered evidence in the remand hearing. Defendant then filed a motion in the Court of Appeals for peremptory reversal. The motion was denied by the Court of Appeals, but the case was again remanded to the trial court for a hearing on defendant's issue of newly discovered evidence and/or ineffective assistance of counsel. At the evidentiary hearing on remand, defendant withdrew his newly discovered evidence claim and relied on the ineffective assistance of counsel claim. The trial court found that defendant failed to prove his claim of ineffective assistance of counsel and denied defendant's motion for a new trial. *Held:*

1. The trial court did not err in ruling that a missing store clerk was not a res gestae witness.

2. Defendant was not denied the effective assistance of counsel.

Affirmed.

S. T. FINCH, J., concurred with the majority's opinion that the missing clerk was not a res gestae witness but dissented on the issue of effective assistance of counsel. She would hold that defendant did not receive effective assistance of counsel and was prejudiced thereby. She would reverse.

### OPINION OF THE COURT

1. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES.

   A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense.

2. PROSECUTING ATTORNEYS — WITNESSES — RES GESTAE WITNESSES.

   Prosecuting attorneys have a duty to endorse and produce all res gestae witnesses (MCL 767.40; MSA 28.980).

3. CRIMINAL LAW — WITNESSES — APPEAL.

   The Court of Appeals, in reviewing a decision of a trial court as to the status of a witness, will reverse only if the decision was clearly erroneous.

4. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — PROSECUTING ATTORNEYS.

   There is a rebuttable presumption that persons present at the time and place of the commission of a crime are res gestae witnesses, and the burden is on the prosecuting attorney to prove otherwise.

5. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

The standard to determine whether a defendant had effective assistance of counsel in a criminal trial is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations.

6. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

A defendant is denied effective assistance of counsel where, but for counsel's serious mistake, he would have had a reasonably likely chance of acquittal.

7. CRIMINAL LAW — ASSISTANCE OF COUNSEL — BURDEN OF PROOF.

The burden is on the defendant to establish his claim of ineffective assistance of counsel.

8. CRIMINAL LAW — ATTORNEY AND CLIENT — ASSISTANCE OF COUNSEL.

A defendant's trial counsel is presumed to have provided effective assistance to the defendant; to overcome this presumption defendant must show that there was a failure to perform an essential duty owed by counsel to the defendant and that this failure was prejudicial to the defense.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY S. T. FINCH, J.

9. CRIMINAL LAW — ASSISTANCE OF COUNSEL — APPEAL.

*An appellate court, in reviewing a claim of ineffective assistance of counsel, must examine (1) the reasonableness of the performance of defense counsel's representation and (2) prejudice to the defendant from any deficient representation; in order to show prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Edward J. Grant,* Prosecuting Attorney, and *Joseph A. Greenleaf,* Chief, Appellate Attorney, for the people.

State Appellate Defender (by *Rolf E. Berg),* for defendant on appeal.

Before: CYNAR, P.J., and WAHLS and S. T. FINCH,* JJ.

PER CURIAM. Defendant was jury convicted of armed robbery, MCL 750.529; MSA 28.797. Following a guilty plea as a third-time felony offender, MCL 769.11; MSA 28.1083, defendant was sentenced to a term of from 8-1/2 to 20 years imprisonment. Defendant appeals from his convictions as a matter of right.

Defendant filed a claim of appeal with this Court on February 4, 1980 (Docket No. 49967). On December 20, 1980, defendant filed a late motion in this Court to remand for the purpose of having the trial court hold a *Robinson*[1] hearing. The motion was denied by this Court in an order issued February 24, 1981, because the motion lacked merit on the grounds presented and was not timely filed pursuant to GCR 1963, 817.6. Defendant sought leave to appeal that decision to the Supreme Court, which denied leave to appeal. See 411 Mich 1060 (1981).

Thereafter, following the filing of appellate briefs by both the prosecution and defendant, the prosecution filed a motion to affirm in this Court on May 6, 1981. The issues raised by defendant were whether defendant was entitled to a remand for a *Robinson* hearing and whether a prior conviction for negligent homicide was a proper basis for supplementing defendant's sentence under the habitual offender statute. The motion to affirm was granted on September 25, 1981.

Defendant again sought leave to appeal to the Michigan Supreme Court. In an order entered June 18, 1982, in lieu of granting leave to appeal, the Supreme Court determined that, since defen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *People v Robinson*, 390 Mich 629; 213 NW2d 106 (1973).

dant's motion to remand identified an issue sought to be reviewed on appeal which should initially be decided by the trial judge (the Court making no reference to the motion's lack of timeliness), this Court should have granted defendant's motion to remand to the trial court. As a result, the Supreme Court vacated the orders of this Court denying defendant's motion to remand and granting the prosecution's motion to affirm. The case was remanded to this Court with instructions to remand to the circuit court, while retaining jurisdiction, for a hearing on defendant's allegation that the prosecution failed to endorse and produce res gestae witnesses. The Supreme Court retained no jurisdiction.

In an order entered July 14, 1982, this Court remanded the case to the Jackson County Circuit Court for a hearing on defendant's "allegations that plaintiff failed to endorse and produce res gestae witnesses". This Court retained jurisdiction. Following a hearing on the remand, the trial court found that the three persons who were not endorsed on the information (two people from the Cabaret Bar and the person at the 7-11) were not res gestae witnesses.

On remand, defendant's counsel received copies of police reports in response to his motion for discovery after his earlier informal requests had been denied. The police reports contained facts not revealed to the jury concerning the reliability of the identification of defendant as the robber. The facts were: (1) Donald West, the cab driver, admitted in his initial statement that he and the robber had been driving back streets smoking marijuana prior to the robbery; (2) the cab driver could not pick defendant out of a photographic line-up on the night of the offense and convinced the detective in charge of the investigation that he would

not be able to make an identification; and (3) that one of the two persons in the bar, who positively identified defendant at trial, was unable to pick defendant's photograph from the same photographic array the day after the offense. Defendant's counsel sought permission to raise the additional issue of newly discovered evidence in the remand hearing. Permission was denied since the trial court believed the issue was outside the scope of the remand order. The trial court decided not to hear the newly revealed evidence issue unless this Court directed it to do so in a further order of remand.

On March 23, 1983, defendant filed a motion for peremptory reversal in this Court. Defendant requested that this Court grant: (1) a peremptory reversal based on what was characterized as the clearly erroneous decision of the trial court in refusing to recognize the store clerk as a res gestae witness; or (2) a further remand for a hearing on "the newly revealed issues of newly discovered evidence and/or ineffective assistance of counsel" in order that all issues which would eventually be litigated would be consolidated in a single appeal; or (3) that the case be placed on this Court's case call so that defendant would have the benefit of oral argument and formal submission which were denied him on his appeal as of right.

Defendant's motion for peremptory reversal was denied by an order of this Court dated November 23, 1983. However, the case was again remanded to the circuit court for a hearing on defendant's issue of "newly discovered evidence and/or ineffective assistance of counsel". This Court retained jurisdiction.

An evidentiary hearing was held on December 15, 1983. Defendant withdrew his claim of newly discovered evidence and at the hearing relied on

his claim of ineffective assistance of counsel. The entire matter is now before this Court on the merits.

Defendant entered the Cabaret Bar in Jackson at approximately 1:30 a.m. on April 12, 1979. The owner of the bar, Ray Eicher, testified that defendant asked him to call for a cab. Eicher called the Trolz Cab Company. At 1:37 a.m., a cab, driven by Donald West, was dispatched to the bar. Defendant left the bar and entered the cab.

The complainant, Donald West, testified that he was driving a cab in the early morning hours of April 12, 1979, and that he picked up defendant at the Cabaret Bar. Defendant asked to be driven to 1021 First Street in Jackson, Michigan, but on the way defendant changed his mind, stated he wanted to go to WC's, but finally asked to be driven to a 7-11 store. West drove to a 7-11 store and defendant went in and then came out of the store. After the cab left the store and was moving, defendant held a knife to West's neck. Defendant threatened West and forced him to hand over $50 in cash, along with a Timex watch. Defendant made West drive around for a short period of time and then ordered the cab to stop. Defendant took the cab keys and threw them out of the cab. Defendant then ran away.

West reported the robbery and police officer Duane Vinton responded to the call. The officer testified that, when he arrived at the scene, West had a slight laceration on his neck, approximately 3-1/2 inches long. In the back seat of the cab the officer found a brown paper bag containing a can of pop. West told the officer that the bag was not in the cab prior to the time he picked up his last fare at the Cabaret Bar. The can of pop was checked for fingerprints, however the prints on the can were not those of defendant.

Defendant lived at 1021 First Street in Jackson, the address to which the assailant had initially requested to be driven. Apparently, this address was well known to the local police because defendant was an informant for the police.

After defendant was arrested and given his *Miranda*[2] warnings, he stated that he had spent the early evening of April 11, 1979, working with officers of the Metro Squad and that they had dropped him off at the Town Bar. Defendant said that he had a few drinks at the Town Bar, went to the Cabaret Bar for a drink, and then walked home. Defendant's statement was corroborated in part by the testimony of a detective who indicated that he had continued surveillance of defendant until approximately 8:30 that evening, at which time he saw an undercover officer take defendant to the area of the Town Bar and drop him off. At the trial, defendant was identified by Ray Eicher, the owner of the Cabaret Bar, and by Mrs. Eicher, who worked at the bar. Both were present when defendant left the bar. After instruction the jury returned a guilty verdict.

Two claims of error remain which must now be addressed. First, defendant contends that he is entitled to a new trial because the trial court erred in ruling that the missing clerk was not a res gestae witness. We disagree.

A res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense. *People v LeFlore,* 122 Mich App 314; 333 NW2d 47 (1983). The prosecutor is under a duty to endorse and

---

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

produce all res gestae witnesses. MCL 767.40; MSA 28.980; *People v Norwood,* 123 Mich App 287; 333 NW2d 255 (1983), *lv den* 417 Mich 1006 (1983).

In reviewing a decision of the trial court as to the status of a witness, this Court will reverse only if the decision was clearly erroneous. *People v Abrego,* 72 Mich App 176; 249 NW2d 345 (1976). Although the trail court did not use the "continuum of the criminal transaction" language, we believe the court ruled correctly.

There is a rebuttable presumption that persons present at the time and place of the commission of a crime are res gestae witnesses and the burden is on the prosecutor to prove otherwise. *People v Samuels,* 62 Mich App 214; 233 NW2d 520 (1975). There is no indication that the 7-11 clerk was near to, or present at, the time and place of the crime. The robbery of the cab driver started when defendant pulled a knife on the driver and continued until defendant fled from the vehicle. When defendant left the 7-11 store, the criminal transaction had not yet begun. Consequently, there is no presumption that the 7-11 clerk was a res gestae witness. The 7-11 clerk was not a witness to an event in the continuum of a criminal transaction and thus was not a res gestae witness. Therefore, the trial court's ruling on the issue was not clearly erroneous.

The other issue submitted for our consideration is whether defendant was denied effective assistance of counsel. The standard by which the assistance given by counsel is judged is found in *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977).

"Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's inter-

ests, undeflected by conflicting considerations." See also, *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974).

In addition, this Court will also examine particular mistakes of counsel, which is the other branch of the inquiry. Defendant is denied effective assistance of counsel if, but for counsel's serious mistake, defendant would have had a reasonably likely chance of acquittal. *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969).

At a *Ginther*[3] hearing, as was held in the trial court, the burden is on the defendant to establish his claim of ineffective assistance of counsel. *People v Harlan,* 129 Mich App 769; 344 NW2d 300 (1983). A defendant's trial counsel is presumed to have provided effective assistance to the defendant. To overcome this presumption, the defendant must show that there was a failure to perform an essential duty owed by counsel to the defendant and that this failure was prejudicial to the defense. *People v Tranchida,* 131 Mich App 446; 346 NW2d 338 (1984).

The *Ginther* hearing took place some four years following trial. Defendant's trial counsel testified that at the time of trial he had been practicing law for five years and had handled approximately 800 felony cases. He had also been a detective on the Youngstown Police Department for twelve years prior to becoming an attorney. While he did not specifically recall the strategy he used at defendant's trial, he did remember that the witnesses at the preliminary examination gave very positive identifications of defendant. He admitted that he never saw any of the police reports.

Even though defense counsel failed to obtain the police reports through discovery, failed to move to suppress the identifications of defendant, and did

---

[3] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

not ask for a *Wade*[4] hearing, defense counsel did investigate on his own. Defendant has failed to show how he was prejudiced by this trial counsel's omissions.

Defendant's trial counsel learned that all three identifying witnesses would state that defendant had been wearing tan pants and a blue jacket. Defendant told his trial counsel that earlier in the evening he had been working with Tom Corwin of the sheriff's department. When questioned as to how defendant was dressed, Mr. Corwin also stated that defendant had been wearing tan pants. Although defendant represented to his trial counsel that he had been wearing blue jeans, everyone who had come into contact with defendant that night disputed his account of what he had been wearing. Also, defendant did not inform his attorney that he had been smoking marijuana with the cab driver. Williams, defendant's trial counsel, stated that as a matter of trial strategy he probably would not have impeached West with that fact at trial even if he had know about it. This Court will not substitute its judgment for that of defense counsel in matters of trial strategy. *People v Whalen,* 129 Mich App 732; 342 NW2d 917 (1983). The decision to move for suppression of the identifications and/or a *Wade* hearing was a matter of strategy which we will not disturb. In addition, there was other strong evidence against defendant. He gave the cab driver his home address when he first entered the cab.

In our opinion, defense trial counsel performed as well as an attorney of ordinary training and skill in criminal law. Additionally, given the nature of the evidence against defendant, it cannot be said that defendant's trial counsel made a

---

[4] *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

mistake so serious that but for that mistake defendant would have had a reasonably likely chance of acquittal.

Affirmed.

S. T. FINCH, J. *(concurring in part and dissenting in part).* I concur in the result reached by the majority on the res gestae issue. I must, however, respectfully dissent from the subsequent portion of the majority opinion which concludes that defendant was not denied effective assistance of counsel.

The majority holds that defendant has failed to show prejudice sufficient to overcome the presumption of effective assistance of counsel and given the "nature of the evidence" against defendant, it cannot be said that defense counsel made a serious mistake but for which defendant would have had a reasonably likely chance of acquittal.

In *Strickland v Washington,* — US —; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court adopted standards for ineffective assistance of counsel claims not unlike those promulgated by the Michigan Supreme Court in *People v Garcia,* 398 Mich 250, 264, 266; 247 NW2d 547 (1976). Under *Strickland,* the court must examine: (1) the reasonableness of the performance of defense counsel's representation and (2) prejudice to defendant from any deficient representation. In order to show prejudice, defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 104 S Ct 2068. More Specifically, "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt

respecting guilt". 104 S Ct 2069. Under either this standard or that of *People v Garcia,* I cannot conclude that in the present case defendant was not prejudiced. I also do not believe that the other evidence against defendant was so overwhelming that the deficiency of counsel can be considered harmless beyond a reasonable doubt.

At the time of his arrest, defendant was working as an informant with the county sheriff. He was charged with the armed robbery of a cab driver. The jury heard the complainant and two other witnesses unhesitatingly identify defendant as the robber. (These two other witnesses had seen the person who called the cab in the bar earlier that evening.) The entire case rested on the identification, by these three witnesses, of the person they saw call the cab and the person who was the cab passenger. Following the robbery, a 7-Up can was found in the cab and yielded a fingerprint which was not that of the defendant.

During the appellate process, appellate defense counsel discovered that the police report stated that the cab driver had told the police that on the night of the robbery he had been smoking marijuana with the robber-passenger and could *not* identify him. Since this police report was not furnished to defendant's trial counsel (who had not requested it, either informally or by discovery motion), the jury never heard about the cab driver's statement. No explanation was ever given by the cab driver as to how he was later able to give a positive identification when at first he could make no identification at all.

The police report further revealed that one of the two people who had been in the bar, and who at the trial identified defendant as the person who called the cab, was unable to identify defendant from a photo lineup held soon after the event.

Likewise, this discrepancy in identification, or any explanation for it, was never brought before the jury.

Certainly where the identification is the main thrust of the people's case, defense counsel has a strong duty to look behind it. Here no effort was made in this direction.

If we assume that the cross-examination on the contents of the police report would have either shaken the witnesses' in-court identification or impaired their credibility, which I believe we must, there is a strong possibility the conviction would not have occurred. It troubles me, as it did appellate counsel, that the prosecution argued "unshaken identification" while knowing the weakness of those identifications.

Defense counsel says he would not have brought out the marijuana smoking at trial because the jury might believe his client was a "dope addict". This sounds reasonable—until we realize that it was the *robber* who was smoking marijuana—and the whole defense was that defendant was *not* the robber. So it would not affect the jury's estimation of defendant unless they believed he was the robber, in which case they would find him guilty anyway. No one has even raised the point that this jury would apparently have thought the *complainant* was a drug addict and what that would do to their evaluation of *complainant's* testimony.

The majority concludes that there was additional strong evidence against the defendant. I do not see it. There was a can, which the robber presumably placed in the back seat, which bore a fingerprint which was not defendant's. While there was one witness who identified defendant without difficulty, there were two other witnesses who were unable to identify the defendant immediately after the event, one of whom was admittedly un-

der the influence of marijuana at the time of the offense. The trial judge and the majority rely on defense counsel's testimony at the *Ginther*[1] hearing that other people (not trial witnesses) told defense counsel that on the night of the robbery, defendant was wearing the same color clothing as the robber. Defendant denied wearing the same color clothing. Such collateral (and hearsay) corroboration of guilt hardly seems to warrant the appellation "strong evidence".

The passenger-robber gave the cab driver the defendant's home address as his destination. This would seem to be damaging evidence until we consider that defendant was a police informant— certainly a prime target for a frame by disgruntled associates if they discovered they had been informed against by him. There are two additional possibilities which come immediately to mind. First, that the robber, though not the defendant, was in fact on the way to defendant's house when he entered the cab. Second, that the robber gave an altogether false address—which turned out to be the defendant's. Certainly the least likely possibility is that the robber gave the cab driver his own address just prior to robbing him.

So, with knowledge of the contents of the police report, we have the following "strong evidence":

1) three positive identifications—two of which are not so positive—and one by a jury-determined drug addict;

2) a fingerprint which is not the defendant's;

3) arguably matching clothing (if the prosecution had found the people from whom defense counsel got this information—which did not happen at trial); and,

4) defendant's home address given to the cab

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

driver (certainly a death wish if defendant was in fact the robber, and not even explained by the smoking of the marijuana since it was smoked *after* the address was given).

I am convinced that defendant did not receive effective assistance of counsel under the standards of *Garcia* and *Strickland, supra,* and that defendant was prejudiced thereby. I believe that defendant has shown that there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt, *Strickland, supra,* and an injustice may well have been done in convicting him on this weak evidence. I would, therefore, reverse.